**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

-----------------------------------------------------X
In re:                             :        **CHAPTER 7**
                                   :
**MITCHELL E. GREEN**        :        **CASE NO. 23-50164 (JAM)**
                                     :
       **DEBTOR.**                :
-----------------------------------------------------X

**MOTION OF SIRE CHAMPAGNES, LLC FOR RELIEF FROM THE AUTOMATIC STAY FOR CAUSE TO CONTINUE PROCEEDING TO CONFIRM IN PART, MODIFY IN PART, AND VACATE IN PART ARBITRATION AWARD AND ARBITRATION**

Sire Champagnes, LLC ("<u>Sire Champagnes</u>"), moves for relief from the automatic stay pursuant to section 362(d) of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 4001(a)(1) in order to proceed to a final judgment in a proceeding to confirm in part, modify in part, and vacate in part an award entered in an arbitration between Sire Champagnes, CCVUSA LLC ("<u>CCV</u>"), and Matthew McMann ("<u>McMann</u>") and, to the extent any issues are remanded, to proceed to a confirmed award in the arbitration.

**PRELIMINARY STATEMENT**

1. Before the Debtor filed this case, Sire Champagnes initiated arbitration for, among other claims, a declaration that CCV, owned by McMann, and purportedly by the Debtor as well, has no interest in Sire Champagnes. The arbitration arose from a fraud McMann and the Debtor perpetrated against Sire Champagnes. Together, they concealed the Debtor's purported interest in CCV from Sire Champagnes and/or transferred ownership interests in CCV to the Debtor in violation of CCV's agreements with Sire Champagnes. They also conspired to defraud Sire Champagnes' founding member, Sire Spirits, LLC ("<u>Sire Spirits</u>"), out of millions of dollars by causing it to pay artificially inflated prices to its suppliers and pocketing the difference. On September 18, 2023, the Debtor pled guilty to criminal charges arising from the fraud. The next

day, this Court entered default judgment declaring a nearly $7 million prepetition judgment Sire Spirits had obtained against the Debtor for fraud non-dischargeable.

2.      The parties had completed briefing in the New York Supreme Court on cross-petitions to confirm in part, modify in part, and vacate in part the arbitrator's award, before they were stayed by the Debtor's bankruptcy filing. The award, *inter alia*, denied rescission of CCV's purported interests in Sire Champagnes, but voided the transfer of any purported interests in CCV to the Debtor. Sire Champagnes respectfully requests that the Court modify the automatic stay to allow the state court and arbitration proceedings to continue so that the CCV rescission can be ordered as is required by the record already established in the initial arbitration.

3.      The Trustee, despite having been provided with evidence of the Green-led fraud and the award that has voided the Debtor's alleged interest in CCV, has not acknowledged that the estate lacks an interest in CCV. The continuation of the confirmation and vacatur proceedings, which will lead to the recission of any residual Debtor interest in CCV, is an important and efficient contribution to the resolution of the Debtor's chapter 7 estate (Sire Spirits, Sire Champagnes' parent company, being the estate's largest stakeholder by a significant order of magnitude is concerned particularly with the efficient resolution of the estate's business).

4.      Accordingly, the Court should enter an order permitting the state court and, if necessary, arbitration proceedings to continue. Such an order is necessary not only to give Sire Champagnes much needed finality when time is of the essence—the Debtor, an important witness in the proceedings, is scheduled to be sentenced in his criminal prosecution in January 2024—but to settle, finally, properly, that the Debtor has no interest in CCV.

**JURISDICTION AND VENUE**

5.    This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

**BACKGROUND**

**I.    THE FORMATION OF SIRE CHAMPAGNES.**

6.    Sire Champagnes creates, markets, and sells high-end champagne under the Le Chemin du Roi brand. Sire Spirits manages and owns at least 92% of Sire Champagnes. CCV purports to own the other 8% of Sire Champagnes.

7.    In or around 2015, an individual named Michael Caruso undertook efforts to help Sire Spirits launch Sire Champagnes. McMann, an acquaintance of Caruso, referred him to the Debtor, and Caruso then connected Sire Spirits with the Debtor.

8.    Between 2016 and the start of his formal employment in 2018, the Debtor informally assisted Sire Spirits in acquiring a source of champagne to bottle and sell. He was to be compensated with an 8% interest in Sire Champagnes. However, the Debtor directed Sire Spirits to instead grant the 8% interest to CCV, which the Debtor claimed was wholly owned by McMann. Indeed, the Debtor and McMann repeatedly represented to Sire Champagnes that McMann was the sole owner of CCV.

9.    It was important to Sire Champagnes to know and control who it was doing business with and who its indirect owners were. Accordingly, in addition to a standard operating agreement, Sire Champagnes required that CCV enter into a Contribution Agreement (the "Contribution Agreement") in which CCV represented, warranted, and agreed McMann owned 100% of CCV's membership interests. CCV also agreed that, except with Sire Champagnes' prior

3

written consent, no interests in CCV shall be issued or transferred to any person other than McMann. A true and correct copy of the Contribution Agreement is attached hereto as Exhibit A.

10.     The Contribution Agreement was incorporated by reference into Sire Champagnes' Limited Liability Company Agreement (the "LLC Agreement"). A true and correct copy of the LLC Agreement is attached hereto as Exhibit B.

## II.    THE DEBTOR'S EMBEZZLEMENT.

11.     The Debtor subsequently became a salaried employee of Sire Spirits as its Director of Brand Management until his termination, in which position he was the primary (and typically sole) contact with the company's champagne and cognac suppliers in France.

12.     In February 2020, the Debtor confessed to Sire Spirits' principal that he had been embezzling millions of dollars by colluding with its suppliers to artificially increase certain prices it paid and funneling the excess to himself and his co-conspirators.

13.     Sire Spirits subsequently commenced an arbitration proceeding against the Debtor and ultimately was awarded damages for breach of fiduciary duty, fraud, breach of contract, and unjust enrichment. The U.S. District Court for the Southern District of New York affirmed the award, which was converted to a judgment (the "Judgment") in the amount of $6,960,471.18 as of the Petition Date (as defined below), including pre- and post-judgment interest.

## III.    THE ARBITRATION WITH MCMANN AND CCV.

14.     As part of the Debtor's February 2020 confession, he also disclosed he was purportedly a co-owner of CCV with McMann (and potentially others). This was the first time Sire Champagnes learned McMann may not have been the sole owner or interest-holder of CCV as required by the Contribution Agreement.

15.     Accordingly, the Contribution Agreement was either false when McMann signed it for CCV and/or was subsequently violated. This was particularly problematic because government

4

liquor license applications typically require that applicants accurately and truthfully disclose their ownership and details regarding their owners, e.g., whether any owners have criminal records. Indeed, Sire Champagnes required that McMann, as part of the Contribution Agreement, include any criminal history and other information that Sire Champagnes would be required to disclose of its direct or indirect owners. *See* Ex. A, at 4–7.

16. On March 16, 2020, Sire Champagnes, therefore, notified CCV, McMann, and the Debtor it was rescinding the membership interest it had purportedly granted to CCV (to the extent such grant may have ever been effective).

17. On June 1, 2020, Sire Champagnes initiated arbitration (the "Arbitration") against CCV and McMann under American Arbitration Association Commercial Arbitration Rules. Arbitration was mandatory, as the parties agreed to arbitrate any disputes arising out of the Sire Champagnes LLC Agreement. Ex. B, § 14.12.

18. Sire Champagnes ultimately asserted six claims against CCV and McMann in the Arbitration, including, *inter alia*, claims for fraudulent inducement (Count I), conspiracy to commit fraud (Count II), and breach of contract (Counts III–IV).[1] The primary remedy Sire Champagnes sought for Counts I–IV was rescission of CCV's purported interest in Sire Champagnes, as it was the only remedy that would adequately address Sire Champagnes' injuries. A true and correct redacted[2] copy of Sire Champagnes' Amended Statement of Claim (as filed in the State Court Proceeding (as defined below)), dated December 10, 2020, is attached hereto as Exhibit C, omitting its exhibits.

---

[1] Counts V and VI also asserted claims, relating to CCV's and McMann's roles in the Debtor's embezzlement scheme, for conspiracy to commit fraud and breach of contract.

[2] The arbitration between Sire Champagnes, CCV, and McMann was confidential. Certain of the documents from the arbitration were subsequently filed publicly, but in redacted form pursuant to a court order requiring that portions of the documents be maintained as confidential. Accordingly, certain of the exhibits to this Motion are the as-filed versions of the documents containing the court-ordered redactions.

19.     The parties held a final merits hearing in the Arbitration in February and March 2022 at which the Debtor testified as a witness.

20.     On May 26, 2022, the arbitrator issued an award (the "Award"). The Award, *inter alia*, held any transfers of membership or other interests in CCV to anyone other than McMann (i.e., the Debtor) are void. However, it denied rescission of CCV's purported 8% interest in Sire Champagnes.[3] A true and correct redacted copy of the Award is attached hereto as Exhibit D.

## IV.     THE CONFIRMATION AND VACATUR PROCEEDINGS.

21.     On August 23, 2022, Sire Champagnes filed a petition (the "Sire Champagnes Petition") with the New York Supreme Court (the "State Court") to confirm in part, modify in part, and vacate in part the Arbitration Award.

22.     Specifically, Sire Champagnes sought, *inter alia*, to vacate the Award to the extent it denied rescission of CCV's interest in Sire Champagnes.[4] A true and correct redacted copy of the Sire Champagnes Petition is attached hereto as Exhibit E.

23.     On September 30, 2022, McMann and CCV filed a joint cross-petition (the "McMann/CCV Petition") to confirm in part and vacate in part the Arbitration Award. A true and correct redacted copy of the McMann/CCV Petition is attached hereto as Exhibit F.

24.     The parties fully briefed their cross-petitions and the State Court subsequently scheduled oral argument for April 26, 2023.

---

[3]     The arbitrator also found McMann breached his contractual representation that he was the sole member of CCV and held Sire Champagnes prevailed on its first claim for breach of contract, but the arbitrator failed to rule on Sire Champagnes' second claim for breach of contract and on its claims for fraudulent inducement and conspiracy to commit fraud.

[4]     Sire Champagnes also sought to vacate the Award to the extent it neither granted nor denied Sire Champagnes' claims for fraudulent inducement, conspiracy to commit fraud, and breach of contract, voided any transfers of McMann's interests in CCV, and denied Sire Champagnes' request for attorneys' fees and costs; modify the Award to correct certain errors; and confirm the remainder of the Award.

## V.     THE DEBTOR'S BANKRUPTCY CASE.

25.     On March 14, 2023 (the "Petition Date"), the Debtor filed this chapter 7 bankruptcy case. Kara S. Rescia (the "Trustee") was assigned as chapter 7 trustee of the Debtor's estate. Despite the Award voiding the transfer of any interest in CCV to him and Sire Champagnes' pending rescission claims in respect of the Contribution Agreement and the LLC Agreement, the Debtor has listed a 7/8ths ownership interest in CCV in his schedules. Docket No. 21, at 19.

26.     On April 13, 2023, the Trustee served a Suggestion of Bankruptcy on counsel for Sire Champagnes, McMann, and CCV. The Suggestion of Bankruptcy stated:

> One of the assets in the bankruptcy case is Mitchell Green's interest in CCVUSA LLC, and therefore is property of the bankruptcy estate pursuant to 11 U.S.C. §[ ]541. ***The validity or extent of said interest in CCVUSA LLC is a central issue in the above-captioned matter.*** Pursuant to 11 U.S.C. §[ ]362(a), therefore, the case before this Honorable Court is stayed.

A true and correct copy of the Suggestion of Bankruptcy is attached hereto as Exhibit G (emphasis added).

27.     On May 30, 2023, in respect of the automatic stay triggered by the Debtor's filing and after postponing oral argument, the State Court so-ordered a stipulation (the "Stipulation") between the parties staying the proceeding (the "State Court Proceeding") until the Debtor's case is dismissed or this Court grants the parties relief from the automatic stay to continue the State Court Proceeding. A true and correct copy of the so-ordered Stipulation is attached hereto as Exhibit H.

28.     On June 2, 2023, Sire Spirits filed a complaint [Docket No. 27] objecting to the discharge of its Judgment against the Debtor under sections 523(a)(2)(A), (a)(4), and (a)(6).

29.     On September 19, 2023, the Court entered default judgment against the Debtor in Sire Spirits' adversary proceeding, deeming the Judgment nondischargeable. That Judgment is now final and unappealable.

7

## VI.    THE DEBTOR'S CRIMINAL PROCEEDING.

30.    On September 18, 2023, the United States filed a criminal information against the Debtor in the U.S. District Court for the District of New Jersey. It charged him with violations of 18 U.S.C. §§ 1343 and 2 arising from his embezzlement scheme. A true and correct copy of the information is attached hereto as Exhibit I.

31.    The information charged that the Debtor, *inter alia*, defrauded Sire Spirits by "fraudulently causing the Victims to pay inflated prices for champagne and cognac from French distributors so that the distributors would pay GREEN kickbacks for those sales" and "concealing from the Victims over $2 million in kickbacks that GREEN received for himself and others based on those inflated sales." *Id.* ¶ 1.

32.    On September 18, 2023, the Debtor pleaded guilty pursuant to a plea agreement which he had signed on August 1, 2023. True and correct copies of the minutes from the Debtor's plea hearing and the plea agreement are attached hereto as Exhibit J and Exhibit K, respectively

33.    Pursuant to the plea agreement, the Debtor agreed not to challenge a sentence of imprisonment of 41 months or less, and prosecutors agreed not to challenge a sentence of imprisonment of 33 months or more. Ex. L at 9. The Debtor's sentencing is scheduled for January 23, 2024. Ex. K.

34.    To the best of Sire Champagnes' knowledge, prosecutors' investigation is ongoing. It is presently unknown to Sire Champagnes whether CCV or McMann are targets or subjects of that investigation.

## RELIEF REQUESTED

35.    Pursuant to section 362(d)(1) of the Bankruptcy Code and Rule 4001(a)(1), Sire Champagnes requests: (a) relief from the automatic stay to proceed to a final judgment in the State

Court Proceeding and, to the extent any issues are remanded, to a confirmed award in the Arbitration, and (b) that the Court waive the fourteen day stay provided for in Rule 4001(a)(3).

**BASIS FOR RELIEF**

**I.      RELIEF FROM THE STAY.**

36.      Sire Champagnes is entitled to relief from the automatic stay to continue the State Court Proceeding and, if necessary, the Arbitration because of the Bankruptcy Code's clear policy in favor of allowing prepetition litigation in non-bankruptcy forums to proceed and resolve in full, particularly those primarily involving third parties and especially in the case of arbitration where there is potential for a complete resolution of the issues, as well as the lack of any interference in the bankruptcy process and the absence of any prejudice to creditors. Indeed, such relief is essential to resolve the central issues in this case, i.e., ownership of the Debtor's purported interest in CCV and the value of such interest, which is inextricably intertwined with Sire Champagnes' petition to vacate the arbitrator's award to the extent it denied rescission of CCV's purported interest in Sire Champagnes.

**A.      The *Sonnax* Factors.**

37.      Section 362(d)(1) of the Bankruptcy Code provides that the Court shall grant relief from the automatic stay "for cause." 11 U.S.C. § 362(d)(1). Although the Bankruptcy Code does not define "cause," it is "a broad and flexible concept that must be determined on a case-by-case basis." *Ahuja v. Fleming (In re Fleming)*, No. 19-51611, 2020 WL 3816282, at *2 (Bankr. D. Conn. July 2, 2020) (Manning, J.).

38.      Thus, as this Court recognized previously, cause may exist to grant stay relief under Bankruptcy Code section 362(d)(1) where an arbitration award has been entered, but not yet confirmed, to allow the parties to continue the underlying state court proceedings. *See, e.g.*, *id.* at

*2–4 (granting movant stay relief for cause to continue proceedings to confirm a FINRA arbitration award of nearly $800,000 of damages against the debtor).

39.     To determine whether to allow such a proceeding to continue in another forum and grant related stay relief, the Second Circuit identified twelve factors in *Sonnax Industries, Inc. v. Tri-Component Products, Corp. (In re Sonnax Industries, Inc.)*, 907 F.2d 1280 (2d Cir. 1990). *E.g.*, *Fleming*, 2020 WL 3816282, at *3. Those factors include:

(1) whether relief would result in a partial or complete resolution of the issue;

(2) lack of any connection with or interference with the bankruptcy case;

(3) whether the other proceeding involves the debtor as a fiduciary;

(4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action;

(5) whether the debtor's insurer has assumed full responsibility for defending it;

(6) whether the action primarily involves third parties;

(7) whether litigation in another forum would prejudice the interests of other creditors;

(8) whether the judgment claim arising from the other action is subject to equitable subordination;

(9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor;

(10) the interests of judicial economy and the expeditious and economical resolution of litigation;

(11) whether the parties are ready for trial in the other proceeding; and

(12) impact of the stay on the parties and the balance of harms.

*Sonnax*, 907 F.2d at 1286.

40.     "Not all of the twelve factors will be relevant in every case." *Fleming*, 2020 WL 3816282, at *3; *accord Spencer v. Bogdanovich (In re Bogdanovich)*, 292 F.3d 104, 110 (2d Cir. 2002) (same). Thus, the Court need not consider every one of the twelve factors, but only those

10

relevant to the particular case. *Mazzeo v. Lenhart (In re Mazzeo)*, 167 F.3d 139, 143 (2d Cir. 1999). Additionally, "the Court does not need to assign equal weight to each factor." *Fleming*, 2020 WL 3816282, at *3. The *Sonnax* factors relevant in this case weigh in favor of granting stay relief to permit the State Court Proceeding and Arbitration to continue.

41.    *First Factor.* Granting stay relief would result in complete resolution of the contested relationships between Sire Champagnes, CCV, the Debtor, which the Trustee has characterized as central to this chapter 7 case. Ex. G. The State Court and, to the extent the State Court remands any questions, the arbitrator, will determine whether CCV has any interest in Sire Champagnes. The State Court will also determine whether the arbitrator was authorized to void any purported Debtor interest in CCV. Thus, Sire Champagnes and Sire Spirits will have finality and the Debtor's estate will be able to be fully administered at limited direct cost to the estate.

42.    Additionally, the Trustee should not be opposed to the resumption of the State Court Proceeding and Arbitration regardless of whether the Award is expanded to cover the broader rescission remedy sought by Sire Champagnes as the Debtor currently has no cognizable interest in CCV. The arbitrator held the Contribution Agreement and LLC Agreement prohibited and rendered void any transfer by McMann of his interests in CCV to the Debtor without Sire Champagnes' consent. Ex. D, at 18–19. Such holding and the resulting Award declaring void the Debtor's purported interest were substantively correct, but incomplete remedies, as Sire Champagnes, *inter alia*, still lacked clarity as to any other third parties who might claim indirect ownership through CCV and was entitled to complete rescission as CCV obtained its purported interest in Sire Champagnes through fraud. Ex. E ¶¶ 64–66, 83–91. This forced Sire Champagnes to press its request to rescind CCV's interest in Sire Champagnes in the State Court Proceeding.[5]

---

[5]    Additionally, because the Award declaring void any interest the Debtor held in CCV was substantively correct, and merely provided Sire Champagnes incomplete relief, Sire Champagnes' request to vacate such relief in favor

43.     Thus, the Trustee cannot administer any interest in CCV under Section 363 of the Bankruptcy Code given the Award and/or during the pendency of renewed Arbitration. *See, e.g., In re Interiors of Yesterday, LLC*, Bankr. No. 02-30563, 2007 WL 419646, at \*6 (Bankr. D. Conn. Feb. 2, 2007) (stating "a Section 363(f)(4) sale cannot be had when there is an unresolved issue of whether the subject property is 'property of the estate'" and that such "issue must be resolved prior to sale"); *see also In re Whitehall Jewelers Holdings, Inc.*, Bankr. No. 08-11261, 2008 WL 2951974, at \*7 (Bankr. D. Del. July 28, 2008) (holding where "the Debtors have not met their burden of establishing that the Consigned Goods are property of the estate under Section 363(b)" they "therefore are not permitted to sell the goods under Section 363(f)(4)").

44.     The first *Sonnax* factor therefore favors stay relief. *See, e.g., Cont'l Cas. Co. v. Pfizer, Inc. (In re Quigley Co., Inc.)*, 361 B.R. 723, 728–30, 744 (Bankr. S.D.N.Y. 2007) (staying an adversary proceeding seeking to determine whether certain insurance policies (which would be used to fund a plan trust) covered prepetition asbestos claims against the debtor, finding the issue could be fully resolved in arbitration for purposes of the first *Sonnax* factor, and granting stay relief to permit such arbitration).

45.     *Fourth, Tenth, and Eleventh Factors.* As the issues have already been fully briefed and argued in Arbitration, and fully briefed in the State Court Proceeding, stay relief will permit tribunals with a substantive and procedural head start as well as necessary expertise to hear the issues regarding the full rescission of the Contribution Agreement and the LLC Agreement. This, in turn, will serve the interests of judicial economy and the expeditious and economical resolution

---

of a correct and complete remedy rescinding CCV's interest in Sire Champagnes in part because of potential procedural defects (the Debtor was purportedly the 7/8ths owner of CCV, a party to the Arbitration, but the Debtor was not directly joined in his individual capacity) does not abrogate the validity of such relief. The Award declaring void the Debtor's interest in CCV will stay in place unless it is vacated or modified upon resolution of the State Court Proceeding.

of litigation relating to the Award. The issues therefore should be decided in the State Court Proceeding and, if remanded, the Arbitration. It would consume significant time and waste the estate's limited resources briefing and re-litigating the issues in this case, in addition to risking inconsistent outcomes in the competing proceedings that would only further cloud the ownership and value of the Debtor's purported interest in CCV.

46.     The fourth, tenth, and eleventh *Sonnax* factors, therefore, favor stay relief. *See, e.g.*, *Fleming*, 2020 WL 3816282, at *3 (finding it would be uneconomical "to start and complete the process of confirming" movant's FINRA arbitration award against the debtor in the bankruptcy court); *see also Cont'l Cas. Co.*, 361 B.R. at 744 (finding the fourth and tenth factors favored stay relief where there was a chance for a complete resolution of, and the arbitrators likely to be selected already had experience with, the parties' issues).

47.     *Sixth, Seventh, and Twelfth Factors.* The Arbitration and State Court Proceeding, which primarily involve third parties, will not interfere with the Debtor's bankruptcy case or prejudice the interests of other creditors. In contrast, Sire Spirits, the Debtor's largest creditor, and Sire Champagnes need finality. And resolution of the Arbitration and State Court Proceeding is necessary to permit the estate to be administered efficiently and thus, maximize the value of the estate to all creditors. Additionally, any further delays risk prejudicing the parties as the Debtor, an important witness in the Arbitration (if remanded by the State Court), may soon become unavailable following his sentencing hearing in January.

48.     The sixth, seventh, and twelfth factors therefore favor stay relief as well. *See, e.g.*, *Fleming*, 2020 WL 3816282, at *3 (finding it would not interfere in the debtor's bankruptcy case or prejudice creditors to allow state court proceedings to confirm movant's FINRA arbitration award to resume); *see also Cont'l Cas. Co.*, 361 B.R. at 744 (stating the debtor did not "articulate[]

13

how it will suffer significant prejudice if the stay is modified" and therefore rejecting the debtor's argument that, because movants would not be harmed by continuation of the stay, the balance of harms weighed against stay relief).

49.     Accordingly, seven of the *Sonnax* factors clearly weigh in favor of granting stay relief. The Court should therefore lift the automatic stay to the extent necessary to allow the State Court Proceeding and Arbitration to resume. *See, e.g.*, *Fleming*, 2020 WL 3816282, at *3–4 (granting movants stay relief to obtain judicial confirmation of their FINRA arbitration award in state court); *Cont'l Cas. Co.*, 361 B.R. at 745 (granting movant insurance companies stay relief to arbitrate whether the policies they issued included coverage for asbestos claims).

**B.     The Prepetition Status Quo.**

50.     Courts in the Second Circuit may also apply a second approach under which they "engage in fact-intensive inquiries which appear to be loosely based on the *Sonnax* Factors . . . in determining whether the automatic stay should be lifted for cause to permit pending litigation in a non-bankruptcy forum." *Fleming*, 2020 WL 3816282, at *4 (internal quotation marks omitted) (citing *In re Project Orange Assocs., LLC*, 432 B.R. 89, 103 (Bankr. S.D.N.Y. 2010)). Under this approach, "courts focus on whether lifting the stay will return the parties to the prepetition status quo (and not create any new rights or take away any rights), essentially applying *Sonnax sub rosa*." *Project Orange Assocs.*, 432 B.R. at 110.

51.     Here, lifting the stay will not create any new, or take away any existing, rights, but merely clarify the impact and enforceability of an existing arbitral award. Thus, as this Court has recognized, it is appropriate to lift the automatic stay under this approach as well to simply permit prepetition arbitration and confirmation/vacatur proceedings to play out, particularly where relief would serve "[t]he interests of judicial economy and efficiency." *E.g.*, *Fleming*, 2020 WL 3816282, at *4 (citing *Holland v. Zimmerman (In re Zimmerman)*, 341 B.R. 77, 78–81 (Bankr.

14

N.D. Ga. 2006); *In re Larry Ivan Behrends*, Bankr. No. 13-22392 (Bankr. D. Colo. Nov. 13, 2013), ECF No. 36)).

## II.   WAIVER OF STAY.

52.   Based on the facts set forth in this Motion, Sire Champagnes requests that the fourteen day stay provided for in Rule 4001(a)(3) be waived.

## CONCLUSION

53.   WHEREFORE, Sire Champagnes respectfully requests that the Court enter an order granting it relief from the automatic stay for the purposes described herein, waiving the requirement under Rule 4001(a)(3) that the order be stayed for fourteen days after entry, and granting Sire Champagnes such other relief as is just and equitable.

Dated: November 13, 2023                    **SIRE CHAMPAGNES, LLC**

By:   /s/ *James Berman*
    James Berman (ct06027)
    John Cesaroni (ct29309)
    ZEISLER & ZEISLER, P.C.
    10 Middle Street, 15th Floor
    Bridgeport, CT 06604
    Tel: (203) 368-4234
    Fax: (203) 367-9678
    Email: jberman@zeislaw.com

*Attorneys for Sire Champagnes, LLC*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

------------------------------------------------------X
In re:                                              :        CHAPTER 7
                                                    :
MITCHELL E. GREEN                                   :        CASE NO. 23-50164 (JAM)
                                                    :
         DEBTOR.                                    :
------------------------------------------------------X

**NOTICE OF SIRE CHAMPAGNES, LLC'S**
**MOTION FOR RELIEF FROM THE AUTOMATIC STAY FOR CAUSE TO**
**CONTINUE PROCEEDING TO CONFIRM IN PART, MODIFY IN PART, AND**
<u>**VACATE IN PART ARBITRATION AWARD AND ARBITRATION**</u>

Sire Champagnes, LLC ("<u>Sire Champagnes</u>"), on November 13, 2023, filed a *Motion for Relief from the Automatic Stay for Cause to Continue Proceeding to Confirm in Part, Modify in Part, and Vacate in Part Arbitration Award and Arbitration* (the "<u>Contested Matter</u>") in accordance with Local Bankruptcy Rule 9014-1, Contested Matter Procedure.

**NOTICE** is hereby given that:

1.      A response date of fourteen (14) days is applicable. See Federal Rules of Bankruptcy Procedure 2002(a) and 9014. The response deadline, set from the date this **NOTICE** was filed with the Court is November 27, 2023 ("<u>Response Date</u>"); and

2.      In the absence of a timely filed response, the proposed **ORDER** may enter without further notice and hearing.

*[Remainder of page intentionally left blank.]*

Dated: November 13, 2023                     **SIRE CHAMPAGNES, LLC**

                                   By:    /s/ *James Berman*
                                          James Berman (ct06027)
                                          John Cesaroni (ct29309)
                                          ZEISLER & ZEISLER, P.C.
                                          10 Middle Street, 15th Floor
                                          Bridgeport, CT 06604
                                          Tel: (203) 368-4234
                                          Fax: (203) 367-9678
                                          Email: jberman@zeislaw.com

                                          *Attorneys for Sire Champagnes, LLC*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

-----------------------------------------------------X
In re:                                              :         **CHAPTER 7**
                                                    :
**MITCHELL E. GREEN**                               :         **CASE NO. 23-50164 (JAM)**
                                                    :
          **DEBTOR.**                               :
-----------------------------------------------------X

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies copies of the foregoing *Motion for Relief from the Automatic Stay for Cause to Continue Proceeding to Confirm in Part, Modify in Part, and Vacate in Part Arbitration Award and Arbitration*, the proposed order and notice required by Local Bankruptcy Rule 9014-l(d), and all exhibits were served on November 13, 2023, in accordance with applicable law by operation of this Court's CM/ECF to those that can accept electronic filing and by U.S. mail to those that are unable to accept electronic filing as set forth below; these parties constitute all entities entitled to notice:

Office of the United States Trustee
The Giaimo Federal Building
150 Court Street, Room 302
New Haven, CT 06510
USTPRegion02.NH.ECF@USDOJ.GOV

The Debtor:
Mitchell E. Green
299 Main Street
Westport, CT 06880

Counsel to Debtor:
George I. Roumeliotis, Esq.
Roumeliotis Law Group, P.C.
157 Church Street, Floor 19
New Haven, CT 06510-2100
george@roumeliotislaw.com

The Trustee:
Kara S. Rescia
5104A Bigelow Commons
Enfield, CT 06082
Tel: 860-452-0052
Email: kara@ctmalaw.com

The Trustee's Counsel:
Paige M. Vaillancourt
5104A Bigelow Commons
Enfield, CT 06082
Tel: 860-452-0052
paige@ctmalaw.com

Creditor Matrix: **Schedule A**

Dated: November 13, 2023               **SIRE CHAMPAGNES, LLC**

By:    /s/ *James Berman*
        James Berman (ct06027)
        John Cesaroni (ct29309)
        ZEISLER & ZEISLER, P.C.
        10 Middle Street, 15th Floor
        Bridgeport, CT 06604
        Tel: (203) 368-4234
        Fax: (203) 367-9678
        Email: jberman@zeislaw.com

        *Attorneys for Sire Champagnes, LLC*

**SCHEDULE A**

Alexander D. Newman, Esq.
Akerman, LLP
1251 Avenue of the Americas, Floor 37
New York, NY 10020-1104

Bank of America
Attn: CEO, President or Owner
100 N Tryon Street
Charlotte, NC 28202-4036

Beam Suntory Inc.
Attn: CEO, President or Owner
11 Madison Avenue
New York, NY 10010-3696

Brand House Group LLC
Attn: CEO, President or Owner
12645 Ridgeway Court
Davie, FL 33312

Curtis James Jackson III
22 Hudson Place, Floor 2
Hoboken, NJ 07030-6752

Dr. Cheryl Gelernter
1 Bradley Road, Suite 903
Woodbridge, CT 06525-2296

Duane Morris LLP
Attn: CEO, President or Owner
777 Main Street, Suite 2790
Fort Worth, TX 76102-5369

Eric R. Breslin, Esq.
Duane Morris LLP
1037 Riverfront Boulevard, Suite 1800
Newark, NJ 07102-5429

G2J Brand Inc.
Attn: CEO, President or Owner
138 Manor Road
Staten Island, NY 10310-2648

Gina Caruso
1000 Stradella Road
Los Angeles, CA 90077-2608

Gretchen Elizabeth Huwer Green
299 Main Street
Westport, CT 06880-2414

Jim Beam Brands Co.
Attn: CEO, President or Owner
11 Madison Avenue
New York, NY 10010-3643

Jovia Financial Federal Credit Union
Attn: CEO, President or Owner
264 E Merrick Road
Valley Stream, NY 11580-6034

Julious Grant
12645 Ridgeway Court
Davie, FL 33330

MCF Consulting Inc.
Attn: CEO, President or Owner
672 Dogwood Avenue, # 220
Franklin Square, NY 11010-3247

Marks Paneth
Attn: CEO, President or Owner
685 3rd Avenue
New York, NY 10017-4024

Memorial Sloan Kettering Cancer Center
Attn: CEO, President or Owner
1275 York Avenue
New York, NY 10065-6007

Michael Caruso
1000 Stradella Road
Los Angeles, CA 90077-2608

NEFCU/Jovia FCU
Attn: Bankruptcy Dept.
1000 Corporate Drive
Westbury, NY 11590-6648

Paul V. LiCalsi, Esq.
Reitler Kailas & Rosenblatt LLC
885 3rd Avenue, Floor 20
New York, NY 10022-4834

Pierre-Yves Kolakowski, Esq.
Zeichner Ellman & Krause LLP
1 Landmark Square, Floor 4
Stamford, CT 06901-2601

Ridgewood Savings Bank
Attn: CEO, President or Owner
7102 Forest Avenue
Ridgewood, NY 11385-5697

Sarah Fehm Stewart, Esq.
Duane Morris LLP
1037 Riverfront Boulevard, Suite 1800
Newark, NJ 07102-5429

Sire Brown LLC
Attn: CEO, President or Owner
22 Hudson Place, Floor 2
Hoboken, NJ 07030-6752

American Express
Attn: CEO, President or Owner
PO Box 981537
El Paso, TX 79998-1537

American Express National Bank
c/o Becket and Lee LLP
PO Box 3001
Malvern PA 19355-0701

Bank of America
Attn: CEO, President or Owner
PO Box 982238
El Paso, TX 79998-2238
Bank of America
Attn: Bankruptcy Dept.
4909 Savarese Circle
Tampa, FL 33634-2413

State of Connecticut Dept. of Revenue Services
Attn: Collections Unit-Bankruptcy Team

450 Columbus Boulevard, Suite 1
Hartford, CT 06103-1837

Department of Treasury
Internal Revenue Service
P O Box 7346
Philadelphia, PA 19101-734

9